UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>THE CRAB STOP BAR AND SEAFOOD GRILL, LLC; and THE CRAB STOP BAR & SEAFOOD GRILL II, LLC,<br><br>Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful sex-based and retaliatory employment practices and to provide appropriate relief to Charging Parties Michaela Farrell and Caroline Mills and a class of former and/or current female employees who were/are adversely affected by such practices. As alleged with greater specificity below, the owner of The Crab Stop Bar & Seafood Grill, LLC and The Crab Stop Bar & Seafood Grill II, LLC subjected Charging Parties and a class of female employees to a sexually hostile work environment based on their sex, including sexually charged comments and groping. Charging Party Michaela Farrell was constructively discharged. Charging Party Caroline Mills was terminated in retaliation for objecting to and complaining about the sexual harassment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper because a substantial part of the events giving rise to Title VII violations occurred at Defendants' business locations. The Crab Stop Bar & Seafood Grill, LLC is located in Sebastian, Florida and The Crab Stop Bar & Seafood Grill II, LLC, is located in Vero Beach, Florida. Both are within the jurisdiction of the U.S. District Court for the Southern District of Florida.

## PARTIES

3. Plaintiff U.S. Equal Employment Opportunity Commission (the "Commission" of "the EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant The Crab Stop Bar and Seafood Grill, LLC ("Crab Stop"), is a Florida limited liability company registered to do business in Florida and has continuously done business in Florida, and at all relevant times, employed at least 15 employees.

5. Defendant The Crab Stop Bar and Seafood Grill, II, LLC ("Crab Stop II"), is a Florida limited liability company registered to do business in Florida and has continuously done business in Florida, and at all relevant times, employed at least 15 employees.

6. At all relevant times, Crab Stop and Crab Stop II have continuously been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## CONDITIONS PRECEDENT

7. More than thirty days prior to the institution of this lawsuit, Charging Party Caroline Mills ("Charging Party Mills" or "Mills") filed a Charge of Discrimination with the Commission alleging that Crab Stop II violated Title VII.

8. The Commission issued a Letter of Determination on July 27, 2022, finding reasonable cause to believe that Crab Stop II subjected Charging Party Mills and a class of female employees to a sexually hostile work environment and terminated Charging Party Mills in retaliation for engaging in protected activity under Title VII.

9. More than thirty days prior to the institution of this lawsuit, Charging Party Michaela Farrell ("Charging Party Farrell" or "Farrell") filed a Charge of Discrimination with the Commission alleging that Crab Stop violated Title VII.

10. The Commission issued a Letter of Determination on July 1, 2022, finding reasonable cause to believe that Crab Stop subjected Charging Party Farrell and a class of female employees to a sexually hostile work environment and that Crab Stop constructively discharged Charging Party Farrell.

11. Prior to initiating this lawsuit, the Commission attempted to correct the unlawful employment practices alleged herein through informal methods of conciliation, conference, and persuasion, to remedy the discriminatory practices and provide appropriate relief. The Commission was unable to secure from Crab Stop or Crab Stop II a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

13. The Crab Stop and the Crab Stop II are restaurants owned and operated by Ellis Bucker and his wife, Brandy Buckner.

14. Prior to opening Crab Stop II, the Buckners co-owned and operated The Crab Stop & Seafood Market of Vero Beach, LLC ("the Market").

15. When the Market closed in October of 2019, the Buckners opened Crab Stop II and many employees from the Market, including Charging Party Mills, transferred to the Crab Stop II.

16. As the owner of Crab Stop and Crab Stop II, Ellis Buckner ("Buckner") was often present at the restaurants greeting guests, making repairs, and conducting business.

### Charging Party Caroline Mills

17. Caroline Mills was 19 years old when she began working as a server at the Market in March of 2019.

18. Mills worked as a server at the Market until October of 2019 when Crab

Stop II was opened and Mills continued working for Crab Stop II until her termination in February 2020.

19.    As a server at the Market and at Crab Stop II, Mills had regular contact with the owner, Ellis Buckner ("Buckner").

20.    In or around May 2019, Mills observed a shift in Buckner's attitude and attention toward her. His regular hugs became longer, tighter, and more sexual in nature. When Mills pushed Buckner away, Buckner laughed and ignored her discomfort.

21.    Buckner's conduct escalated thereafter and included, but is not limited to, commenting on Mills' legs, touching Mills' thigh, making inappropriate sexual comments, and pressing his groin into her back. On each occasion, Mills expressed her displeasure, but Buckner laughed off his conduct.

22.    Mills complained to the general manager, Roderick Scott, who said he had heard similar complaints before and indicated there was little he could do to control Buckner.

23.    Scott changed Mills' schedule to help her avoid Buckner and advised Mills to stay away from him as much as possible.

24.    In October 2019, the Crab Stop II opened and Mills transferred to the new location.

25.    Mills came to the restaurant to sign paperwork and Buckner reached out for a hug, slid his hand down and grabbed her buttocks.

26.    Mills abruptly pulled away and saw that another server had seen what Buckner did. The other server said she "knows how he is" and admitted that Buckner had

made sexual comments and touched her inappropriately as well.

27. Buckner continued to use his physical size and status as the owner of the restaurant to harass and intimidate Mills, leering at her in a sexual way, and making inappropriate sexual comments and physical contact.

28. For example, Buckner's harassment included, among other harassment, hugging Mills too tight, rubbing his groin against Mills, grabbing Mills' thigh, and smacking Mills' butt.

29. On February 17, 2020, Mills attended a meeting with Buckner, Brandy Buckner, and the kitchen manager to discuss alleged misconduct of Mills'. At the meeting, Mills complained about Buckner's inappropriate sexual conduct and harassment and asked that the conduct cease.

30. Buckner became enraged and ordered Mills to leave the restaurant immediately, while threatening to call the police if she did not. Mills attempted to defend herself, but eventually left the restaurant as instructed. As she did, Buckner yelled, "leave and don't come back."

31. Prior to complaining about Buckner's sexual harassment during the February 17, 2020 meeting, there was no indication that Mills would be terminated from her position at Crab Stop II and Mills had no intention of resigning from her position.

32. Charging Party Mills was terminated from her position at Crab Stop II in retaliation for complaining about and objecting to Buckner's sexual harassment.

33. Because of Buckner's unlawful conduct and retaliatory termination, Charging Party Mills was harmed and suffered damages.

Charging Party Michaela Farrell

34. Michaela Farrell was twenty-one when she began working as a bartender at Crab Stop in August 2019.

35. Early in her employment, Farrell heard a rumor about Buckner harassing female employees.

36. On June 6, 2020, Farrell was working the opening bartending shift at Crab Stop when Buckner came behind the bar purportedly to attend to a leaking cooler.

37. Buckner knelt down beside Farrell in a way that she was cornered in and could not easily move from where she was standing.

38. Farell felt trapped by Buckner's body and close proximity, as he was kneeling within 12 inches of her.

39. As he was kneeling beside her, Buckner said, "you have really nice legs" and asked if he could touch them. Without waiting for an answer, he then grabbed Farrell's upper thigh and squeezed for about ten (10) seconds and again commented on Farrell's legs before turning and leaving.

40. Buckner's touching of Farrell's upper thigh was intentional and not an accident.

41. Farrell was shocked by his conduct.

42. Farrell told her coworker, a long time Crab Stop employee, about the incident and her coworker responded, "I thought he had stopped doing that."

43. Farrell then called her supervisor who advised her to leave the restaurant immediately and call her parents.

44. Farrell's supervisor indicated that the harassment would continue were Farrell to remain working at Crab Stop.

45. Farrell's supervisor did not offer to investigate or do anything to help her.

46. Farrell left the restaurant in tears, went home and called the police to report the incident. The police asked Farrell to meet them at the restaurant which she did.

47. The police report indicates that Farrell was visibly upset with tears streaming down her face. The report also states that when she observed Buckner's truck pull up to the restaurant, Farrell became visibly frightened and hid in her vehicle.

48. In the days following her police report, Farrell learned about other women that had been subject to harassment from Bucker.

49. Ultimately, Farrell did not return to work following the incident out of fear for her personal safety due to the likelihood of the harassment reoccurring.

50. Because of Buckner's unlawful conduct, Charging Party was harmed and suffered damages.

## Class of Female Employees

51. Female employees who worked at Crab Stop and Crab Stop II were subjected to frequent sexual harassment by Buckner through touching, sexual comments and propositions, witnessing other female employees being subjected to sexual comments and touching, and hearing about other female employees being subjected to sexual comments and touching.

52. Buckner used his physical size and position of power to overpower and intimidate his female employees and to avoid accountability.

53. When female employees complained about Buckner's behavior, Buckner made those employees feel as if they were overreacting to innocent behaviors.

54. Managers and servers knew of Buckner's conduct but had no authority to discipline Buckner or otherwise curb his behavior.

55. If female employees targeted by Buckner wanted to continue working for Crab Stop or Crab Stop II, they were forced to tolerate Buckner's sexual advances and touching.

56. Kayla Chitty ("Ms. Chitty") worked at Crab Stop from May 2020 through January 2021 as a hostess.

57. Buckner leered at Ms. Chitty in a sexual manner that made her feel violated.

58. Buckner often touched Ms. Chitty inappropriately and rubbed her back despite Ms. Chitty repeatedly backing away to show her discomfort.

59. When Ms. Chitty spoke with other servers about the conduct, she heard comments like, "Oh, he's doing that again."

60. The servers Ms. Chitty spoke to about Buckner's conduct indicated that putting up with such behavior was part of the job and indicated that complaining would not make a difference.

61. Other female employees who worked for Buckner were also subjected to frequent sexual harassment through touching, comments, and witnessing other female employees being subjected to sexual comments and touching.

62. As a result of Buckner's unlawful conduct, a class of female employees of

Crab Stop and Crab Stop II were harmed and suffered damages.

## STATEMENT OF CLAIMS

*Count I – Sexual Harassment – Hostile Work Environment*
*Charging Party Mills – Defendant Crab Stop II*

63.    As set forth in paragraphs 17-33, Defendant Crab Stop II engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Charging Party Mills to a sexually hostile work environment.

64.    The effect of the practices complained of in paragraphs 17-33 has been to affect the terms and conditions of employment for Charging Party Mills at Crab Stop II and to deprive her of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex.

65.    The unlawful employment practices complained of in paragraphs 17-33 were intentional.

66.    The unlawful employment practices complained of in paragraphs 17-33 were done with malice or with reckless indifference to the federally protected rights of Charging Party Mills.

*Count II – Retaliation – Charging Party Mills – Defendant Crab Stop II*

67.    As set forth in paragraphs 17-33, Defendant Crab Stop II engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Charging Party Mills for engaging in protected activity.

68.    The effect of the practices complained of in paragraphs 17-33 has been to

affect the terms and conditions of employment for Charging Party Mills at Crab Stop II and to deprive her of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex.

69. The unlawful employment practices complained of in paragraphs 17-33 were intentional.

70. The unlawful employment practices complained of in paragraphs 17-33 were done with malice or with reckless indifference to the federally protected rights of Charging Party Mills.

*Count III – Sexual Harassment – Hostile Work Environment*
*Charging Party Farrell – Defendant Crab Stop*

71. As set forth in paragraphs 34-50, Defendant Crab Stop engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Charging Party Farrell to a sexually hostile work environment.

72. The effect of the practices complained of in paragraphs 34-50 has been to affect the terms and conditions of employment for Charging Party Farrell at Crab Stop and to deprive her of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex.

73. The unlawful employment practices complained of in paragraphs 34-50 were intentional.

74. The unlawful employment practices complained of in paragraphs 34-50 were done with malice or with reckless indifference to the federally protected rights of Charging Party Farrell.

*Count IV – Sexual Harassment – Constructive Discharge*
*Charging Party Farrell – Defendant Crab Stop*

75. As set forth in paragraphs 34-50, Defendant Crab Stop engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by constructively discharging Charging Party Farrell.

76. The effect of the practices complained of in paragraphs 34-50 has been to affect the terms and conditions of employment for Charging Party Farrell at Crab Stop and to deprive her of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex.

77. The unlawful employment practices complained of in paragraphs 34-50 were intentional.

78. The unlawful employment practices complained of in paragraphs 34-50 were done with malice or with reckless indifference to the federally protected rights of Charging Party Farrell.

*Count V – Sexual Harassment – Hostile Work Environment*
*Class of Female Employees – Defendants Crab Stop and Crab Stop II*

79. As set forth in paragraphs 51-62, Defendants engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting a class of female employees that worked at Crab Stop and Crab Stop II to a sexually hostile work environment.

80. The effect of the practices complained of in paragraphs 51-62 has been to affect the terms and conditions of employment for a class of female employees and to deprive them of equal employment opportunities and to otherwise adversely affect their

status as employees at Defendants because of their sex.

81. The unlawful employment practices complained of in paragraphs 51-62 were intentional.

82. The unlawful employment practices complained of in paragraphs 51-62 were done with malice or with reckless indifference to the federally protected rights of the affected class of female employees.

PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Crab Stop and Crab Stop II, its officers, agents, servants, managers, employees, and all persons in active concert or participation with them, from participating in discriminatory conduct based on sex including, but not limited to, permitting a sexually hostile work environment and/or retaliating against employees who engage in statutorily protected activity in the workplace;

B. Order Crab Stop and Crab Stop II to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices;

C. Order Crab Stop II to make Charging Party Mills whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the Crab Stop II's unlawful employment practices including but not limited to reinstatement and/or front pay;

D. Order Crab Stop to make Charging Party Farrell whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and

other affirmative relief necessary to eradicate the effects of the Crab Stop and the Crab Stop's unlawful employment practices including but not limited to reinstatement and/or front pay;

  E. Order Crab Stop II to make Charging Party Mills whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

  F. Order Crab Stop to make Charging Party Farrell whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

  G. Order Crab Stop and Crab Stop II to make whole the class of female employees, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

  H. Order Crab Stop II to pay Charging Party Mills punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

  I. Order Crab Stop to pay Charging Party Farrell punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

J. Order Crab Stop and Crab Stop II to pay the class of female employees punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

K. Grant such further relief as the Court deems necessary and proper in the public interest; and

L. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Date: September 30, 2022

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, DC 20507

ROBERT E. WEISBERG
Regional Attorney
Florida Bar No. 285676

s/ Kristen M. Foslid
KRISTEN M. FOSLID
Supervisory Trial Attorney
Florida Bar No. 0688681
Kristen.foslid@eeoc.gov
U.S. Equal Employment Opportunity Commission
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500

Miami, Florida 33131
(786) 648-5851